**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-11-03131-001-TUC-JGZ (JR) |
| Plaintiff, | **ORDER** |
| v. | |
| Eliazar Bojorquez-Gastelum, | |
| Defendant. | |

Defendant filed a Motion to Dismiss the Indictment based on two alleged speedy trial right violations. Before the Court is Magistrate Judge Jacqueline M. Rateau's Report and Recommendation (R&R) recommending that the Court deny Defendant's Motion. Because the Court concludes that the Government's negligence is responsible for the nearly eight-year post-indictment delay, and that Defendant was therefore presumptively prejudiced by the delay, the Court declines to adopt the R&R's recommendation, and will grant the Motion to Dismiss the Indictment.[1]

**STANDARD OF REVIEW**

When reviewing a Magistrate Judge's Report and Recommendation, this Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). "[T]he district judge must review the magistrate judge's findings and recommendations de novo if objection is made, but not

---

[1] In reaching the Court's conclusion, it reviewed all filings, as well as the audio recording of the argument on Defendant's Motion that occurred before Magistrate Judge Rateau on January 30, 2020. (Doc. 23.)

otherwise." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) (emphasis omitted). District courts are not required to conduct "any review at all . . . of any issue that is not the subject of an objection." *Thomas v. Arn,* 474 U.S. 140, 149 (1985). *See also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Reyna-Tapia,* 328 F.3d at 1121; *Schmidt v. Johnstone,* 263 F. Supp. 2d 1219, 1226 (D. Ariz. 2003).

## DISCUSSION

### I. Background[2]

On July 5, 2011, Tucson Police Department (TPD) officers arrested Defendant for disorderly conduct in violation of 13 A.R.S. § 2904 and for undocumented alien in possession of a firearm in violation of 13 A.R.S. § 3101(7)(e). The Pima County Attorney declined to bring charges and Defendant was released from state custody and then interviewed by federal agents from Immigration & Customs Enforcement. One agent noted in his I-213 report of the interview that Defendant had been arrested by TPD "for the offenses DISORDERLY CONDUCT-WEAPON/ INSTRUMENT and POSSESS WEAPON by PROHIBITED PERSON." (Doc. 20-2.) Defendant was referred for prosecution to the U.S. Attorney's Office and the next day, the United States elected to charge Defendant with one count of unlawful entry after prior removal in violation of 8 U.S.C. § 1326(a) and one misdemeanor count of unlawful entry in violation of 8 U.S.C. § 1325. The record does not reflect that the United States contacted the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) to investigate the firearm referenced in the federal agent's report, or that the United States contacted TPD to further inquire about the weapon referenced.

On July 13, 2011, Defendant, pursuant to a plea agreement, pled guilty to the § 1325 charge, and on July 18, he was sentenced to 30 days in prison with credit for time served. On August 5, 2011, after serving his time, Defendant was deported to Mexico.

In the interim, according to an ATF Report of Investigation, on July 20, 2011, TPD

---

[2] The following facts are adopted from the R&R and its cited sources, unless otherwise noted.

- 2 -

Detective Hill contacted the ATF in order for the ATF to determine whether the firearm found in Defendant's vehicle[3] at the time of arrest had travelled in interstate commerce. (Doc. 20, pg. 2; 20-4, pg. 2.) As stated in the ATF Report, to make such a determination, an ATF agent simply referenced the *Blue Book of Gun Values*—a resource "routinely relied upon to determine the place of manufacture of firearms." (Doc. 20-4, pg. 2.) After consulting the *Blue Book*, on August 22, the ATF agent concluded that the firearm found in Defendant's vehicle and the accompanying ammunition were not manufactured in Arizona. (*Id.* at pgs. 2-3.) On September 7, 2011, Defendant was federally indicted on one count of possession of a firearm and ammunition by an illegal alien in violation of 18 U.S.C. § 922(g)(5) and 924(a)(2). The next day, a warrant issued for Defendant's arrest and was placed in the FBI's National Crime Information Center (NCIC) database. Over eight years later, on November 16, 2019, the United States executed the 2011 outstanding arrest warrant when Defendant was arrested for alleged illegal re-entry into the United States.

No evidence was presented as to the Government's efforts to locate the Defendant between the return of the indictment on September 7, 2011 and Defendant's arrest on November 16, 2019. In the Government's response to Defendant's Motion to Dismiss, the Government states that in January 2012, a Deputy U.S. Marshal tasked with locating Defendant learned that Defendant might be living in Nogales, Sonora, Mexico. The Government further states that on May 6, 2013, "the Deputy learned defendant was thought to be in prison in Hermosillo, Mexico," and that "the embassy in Mexico was supposed to alert the Deputy Marshal when defendant's release was imminent so that extradition procedures could be initiated," but the Government was never notified. (Doc. 20, pg. 3.) The Magistrate Judge relied on this description of the Government's efforts in recommending that the Court deny Defendant's motion to dismiss. Subsequently, in the Government's response to Defendant's objections to the R&R, the Government stated that at the January 30, 2020 hearing on the Motion, it "learned for the first time that the

---

[3] TPD located a Beretta pistol with Remington ammunition. (Doc. 22-1, pg. 25.)

defendant had never been in prison in Hermosillo." (Doc. 29, pg. 3.)

**II.  Speedy Trial Violation**

In Defendant's Motion to Dismiss, he argues first that the indictment should be dismissed because it was filed outside of the thirty-day period permitted by the Speedy Trial Act, 18 U.S.C. § 3161(b), and second, that the indictment should be dismissed because the nearly eight year post-indictment delay violates his Sixth Amendment right to a speedy trial. Because the Court finds that the post-indictment delay violates Defendant's speedy trial right, the Court does not reach Defendant's first argument.

The Sixth Amendment states that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. In order to determine whether a Defendant's right to a speedy trial has been violated, the Court weighs four factors, "considered together with such other circumstances as may be relevant": (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) the prejudice to the Defendant resulting from the delay. *Barker v. Wingo*, 407 U.S. 514, 530, 533 (1972); *United States v. Alexander*, 817 F.3d 1178, 1181 (9th Cir. 2016).

The length of the delay is a threshold factor and delays approaching one year are generally considered presumptively prejudicial. *United States v. Corona-Verbera*, 509 F.3d 1105, 1114 (9th Cir. 2007); *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992) ("as the term is used in this threshold context, 'presumptive prejudice' . . . simply marks the point at which courts deem the delay unreasonable enough to trigger the *Barker* enquiry"). As the Magistrate Judge found and neither party disputes, the nearly eight-year delay in Defendant's case is sufficiently lengthy to trigger examination of the other factors. As the Magistrate Judge also found, and neither party disputes, Defendant asserted his right to a speedy trial shortly after his arrest in November 2019. There is no evidence suggesting that Defendant knew about the indictment for violating 18 U.S.C. § 922(g)(5) and 924(a)(2) prior to his arrest and that he could have therefore asserted this right earlier. The Court reaches different conclusions, however, from those set forth in the R&R as to the reason

for the delay and the resulting prejudice to Defendant—*Barker* factors two and four.

"The government has 'some obligation' to pursue a defendant and bring him to trial." *United States v. Mendoza*, 530 F.3d 758, 763 (2008) (quoting *United States v. Sandoval*, 990 F.2d 481, 485 (9th Cir. 1993)). Negligence on the part of the Government "should be weighted less heavily" than a "deliberate attempt to delay the trial in order to hamper the defense," "but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Barker*, 407 U.S. at 503; *Doggett*, 505 U.S. at 657 ("persistent neglect in concluding a criminal prosecution indicates an uncommonly feeble interest in bringing an accused to justice; the more weight the Government attaches to securing a conviction, the harder it will try to get it"). If the government fulfills its obligation to bring defendant to trial "with reasonable diligence," on the other hand, "the defendant does not have a speedy trial claim." *Mendoza*, 530 F.3d at 763.

Here, the eight-year delay is not attributable to Defendant and the government has failed to show that it acted with reasonable diligence in bringing Defendant to trial. The overriding reason for the delay in this case was that Defendant was deported following his sentence for the § 1325 violation—which was entirely foreseeable given Defendant's specific charge and conviction. The United States knew, from the federal agent's report, that Defendant had been arrested by TPD on suspicion for illegal possession of a weapon by an alien, but took no immediate steps to ascertain whether the weapon had travelled in interstate commerce.[4] *Cf. United States v. Bryan*, 868 F.2d 1032, 1036 (9th Cir. 1989) ("The prosecutor will be deemed to have knowledge of and access to anything in the possession, custody or control of any federal agency participating in the same investigation of the defendant."). TPD, rather than the United States, ultimately contacted the ATF, and only after the ATF reviewed the origin of the firearm and ammunition did the United States take action.

---

[4] That TPD arrested Defendant for illegal alien in possession and disorderly conduct involving a weapon was also noted in the Pretrial Services Report. (Doc. 19, exh. 56, pg. 2.)

If the United States was interested in charging Defendant with an illegal alien in possession of a firearm charge, it proceeded negligently in doing so for speedy trial purposes. The United States had the relevant information before it at the time of assessing which charges to bring in July 2011 and elected only to charge Defendant with illegal entry and re-entry. The United States argues that the two-month delay in bringing the firearms charge was justified because the ATF needed time to complete the "nexus examination" of the firearm. (Doc. 29, pg. 7.) But all that this examination required was consultation of the *Blue Book of Gun Values*. Moreover, there is no indication on the record that the United States was contemplating an additional charge or was aware that TPD had contacted the ATF—despite the Government's knowledge from the federal agent's report that Defendant had been picked up with a firearm—and if the United States was aware that TPD had contacted the ATF, the United States might have asked the ATF to expedite review, placed a detainer on Defendant, or taken some other measure to proceed with prosecution of a subsequent indictment in a manner compliant with a defendant's constitutional right to a speedy trial. Because the United States did none of those things in 2011, and instead extended a misdemeanor plea offer, which provided for a stipulated 30-day sentence, Defendant was deported (as would be expected) and now faces the firearm possession charge in 2020.

In addition, the steps that the United States took after it had allowed Defendant to be deported prior to the ATF's review—even if credited—were not so great as to neutralize the role that the United States played in allowing the Defendant to be deported in the first place. But the Court is no longer in a position to accept as true the steps that the United States represents that it took, on which the Magistrate Judge based her conclusion.[5] At the January 30, 2020 hearing before Magistrate Judge Rateau, defense counsel represented that his client believed that he was never incarcerated in a prison in Hermosillo, and in the

---

[5] In the R&R, Judge Rateau concluded that the delay was attributable to the Defendant's absence from the United States and Defendant's apparent imprisonment in Mexico, and that by entering Defendant's name into the NCIC computer system and contacting the embassy in Mexico, the United States acted with reasonable diligence to bring Defendant to trial.

United States' response to Defendant's objections to the R&R, the United States stated that "the government learned for the first time [at the hearing] that the defendant had never been in prison"—indicating either that the United States, subsequent to the hearing, consulted its source and confirmed that Defendant was in fact correct in his representation, or that the United States had such an infirm basis for its statement that a Marshal tracked down Defendant that Defendant's allegation at the hearing sufficiently rebutted the United States' confidence in its own assertion.

The Court acknowledges that in some instances, the Government may obtain erroneous information, such as information that a defendant is in a particular prison, which the Government might reasonably rely on in foregoing further efforts to extradite or locate a defendant. In this case, however, there are no specific facts or evidence in the record from which the Court can conclude that the Government's efforts were reasonable, such as the identification of the Marshal responsible for tracking down Defendant, or the source of information indicating that Defendant was in a prison and that the United States would be notified of his release. The Court, therefore, cannot credit the Government's representations as to the efforts taken to extradite Defendant, and concludes that that the United States' negligence is responsible for the extensive delay.

Prejudice to the defendant is presumed when the delay is great and attributable to the government. *United States v. Shell*, 974 F.2d 1035, 1036 (9th Cir. 1992). This is because "time's erosion of exculpatory evidence and testimony 'can rarely be shown.'" *Doggett*, 505 U.S. at 654, 655 (quoting *Barker*, 407 U.S. at 532) (identifying one form of prejudice that can result from post-indictment delay as "the possibility that the [accused's] defense will be impaired by dimming memories and loss of exculpatory evidence").[6] At oral argument, the Government asserted that even if Defendant is presumed prejudiced, that presumption is rebutted because in this case, all witnesses were officers who are, for

---

[6] Having concluded that the Government was reasonably diligent in pursuing Defendant, Magistrate Judge Rateau found that the Defendant bore the burden of demonstrating prejudice. As noted above, Judge Rateau's conclusion that the Government was reasonably diligent relied on the Government's now discredited representation that Defendant was incarcerated in Hermosillo.

the most part, still available, and who memorialized their impressions in writing. This argument oversimplifies the circumstances of Defendant's arrest, however, and lends little merit to the types of defenses that might have been mounted to rebut an illegal alien in possession charge.

According to TPD Officer Evans' report, Officer Epling began following Defendant's car after TPD received word that gunshots had been fired in the vicinity. (Doc. 18, pg. 017.) Officer Epling approached Defendant at gunpoint after Defendant had pulled into a driveway, detained Defendant, and then, upon searching the vehicle, located a pistol. (*Id.*) Defendant indicated at the January 30, 2020, oral argument that he disputes the facts as recorded by TPD. Defendant, however, has no report of his own from the time of the arrest from which to refresh his recollection in order to assist in filing any pretrial motions or in preparing his own testimony at trial. Moreover, although the TPD report does not indicate any other witnesses at the scene, the Court cannot be assured of this fact with certainty for purposes of this analysis, and Defendant would be at a disadvantage locating any potential witnesses after the passage of eight years. Finally, the Government is now required to prove that Defendant knew of his illegal status at the time of the incident, which Defendant might be at a disadvantage to do following the delay, and would not have had in mind at the time of arrest. *See Rehaif v. United States*, 139 S.Ct. 2191 (2019).

In sum, because the post-indictment delay in this case is attributable to the Government's negligence, and because the presumption of prejudice to Defendant is not rebutted on the facts of this case, the Court concludes that Defendant's Sixth Amendment right to a speedy trial has been violated and will grant Defendant's Motion to Dismiss the Indictment.

**CONCLUSION**

Accordingly,

IT IS ORDERED that the recommendation in Magistrate Judge's R&R (Doc. 26) is respectfully declined.

IT IS FURTHER ORDERED that Defendant's Motion to Dismiss the Indictment

with Prejudice (Doc. 16) is GRANTED.  The Clerk of the Court is directed to close the file in this action.

Dated this 3rd day of April, 2020.

_____
Honorable Jennifer G. Zipps
United States District Judge